**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

VENTANA WILDERNESS ALLIANCE,
et. al.,

          Plaintiffs,

    v.

JOHN BRADFORD, et. al.,

          Defendants.
_____/

No. C 06-5472 PJH

**ORDER GRANTING DEFENDANTS'
AND DENYING PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT**

      Plaintiffs' and defendants' cross motions for summary judgment came before the
court for hearing on April 4, 2007.  Peter Frost appeared on behalf of the plaintiffs and
Charles O'Connor appeared for defendants.  Having read the parties' papers and carefully
considered their arguments and the applicable law, the court hereby GRANTS defendants'
motion for summary judgment and motion to strike and DENIES plaintiffs' motion for
summary judgment.

### INTRODUCTION

      Plaintiffs are non-profit environmental and conservation organizations who are
challenging the United States Forest Service's ("Forest Service") decision to allow cattle
grazing on land which has been designated by Congress as protected "wilderness."  At
issue in these cross motions for summary judgment are the two claims asserted by
plaintiffs in their complaint.  The first claim is that the Forest Service's decision to permit
livestock grazing on land known as Kozy Kove violates the Wilderness Act of 1964
("Wilderness Act"), 16 U.S.C § 1131 et seq., because grazing is a prohibited commercial
activity, and the grazing exception contained in the Wilderness Act is inapplicable because
grazing was not "established" on the land when it was designated as wilderness.  The
second claim is that the Forest Service's decision to permit grazing violates the National

1

United States District Court

For the Northern District of California

1  Environmental Policy Act ("NEPA"), 42 U.S.C. § 4231 et seq., in that the environmental

2  assessment ("EA"), which purports to assess the effect of livestock grazing on the land, is

3  deficient because it contains insufficient and inaccurate data.  Each issue is addressed in

4  turn.  Plaintiffs seek review of the Forest Service's decision under the Administrative

5  Procedure Act ("APA"), 5 U.S.C. § 706.

6      The government also filed a motion to strike five declarations that plaintiffs submitted

7  in support of their summary judgment motion on the basis that the declarations are outside

8  the scope of the administrative record and are therefore inadmissible.[1]

9                                    **BACKGROUND**

10      This case involves a 185 acre tract of land which is part of a larger tract of land

11  known as Kozy Kove.  *See* Administrative Record ("AR") 195.  Kozy Kove was historically

12  owned by private individuals and the grazing of livestock on the land had been ongoing

13  since the 1880s.  AR 194, 197.  The parties agree that livestock grazing continued on the

14  land from that time until at least 1990.

15      In 1990, Gilbert and Crystal Zitterbart purchased Kozy Kove.  In April 1995, the Trust

16  for Public Lands ("TPL") purchased Kozy Kove from the Zitterbarts with the intent to

17  transfer it to the Forest Service once the Forest Service had secured funding for the

18  purchase.

19      The parties dispute whether grazing occurred on the land from 1990-1995. Crystal

20  Zitterbart maintains that she and her husband did not permit grazing on the land and that

21  grazing did not occur on the land while she owned it from 1990-1995.  Ms. Zitterbart's

22  statements that grazing did not occur from 1990-1995 were not part of the administrative

23  record.  The government contests Zitterbart's assertions, relying both on the administrative

24  record and extra-record materials showing that grazing occurred on Kozy Kove when it

25  acquired it.  *See* AR 194, 197.

26  _____

27      [1] The government also filed a motion to dismiss Wilderness Watch as a plaintiff because
    it did not exhaust its administrative remedies, but the court previously dismissed Wilderness
28  Watch's claims upon stipulation by the parties.

1    In the mid 1990's, the land was transferred to the Forest Service in two stages. The

2    first transfer took place in April 1995, and the second transfer took place in June 1996. AR

3    614-27. Title to the full tract of land was accepted by the United States in November 1997.

4    AR 628-29. Once it acquired the land, the Forest Service suspended grazing on the land

5    and commenced an environmental assessment to determine the effect of grazing on the

6    newly acquired parcel. According to the Forest Service, it is its policy to suspend all

7    commodity uses including grazing on newly acquired land until an environmental analysis

8    of the land is completed. AR 194.

9    The Forest Service completed an environmental analysis in August 1999 and began

10   publicly considering whether to permit grazing. AR 675-701. In January 2001, the Forest

11   Service issued an EA and decision notices to permit grazing on the acquired land, including

12   Kozy Kove. The decision to permit grazing was appealed. Prior to the completion of the

13   appeal process, the Forest Service withdrew the decision to permit grazing and the appeal

14   was dismissed. AR 200-01.

15   On March 22, 2002, Congress passed the Big Sur Wilderness and Conservation Act

16   of 2002, which designated 54,165 acres in the National Forrest System as "wilderness."

17   Included in those acres were the 185 acres at issue here. The parties agree that these 185

18   acres are "wilderness" land subject to the Wilderness Act and NEPA.

19   In the fall of 2004, the Forest Service issued a second EA followed by decision

20   notices in December of 2004 to permit grazing on Kozy Kove. This decision was appealed

21   and the Forest Service again withdrew the decision to permit grazing in March 2005. AR

22   201.

23   In September 2005, the Forest Service issued a third revised EA to document the

24   analysis used to decide whether or not to authorize livestock grazing on Kozy Kove.

25   Pursuant to NEPA, on September 25, 2005, a decision notice issued authorizing grazing on

26   Kozy Kove annually from December 15 to May 15. AR 349. The decision was appealed by

27   plaintiffs and affirmed by the Region Appeal Reviewing Officer and the Region Appeal

28   Deciding Officer. AR 2099.

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DISCUSSION**

A.     Legal Standards

        1.     Administrative Procedure Act

        Review of agency actions under the Wilderness Act and NEPA is governed by the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, et seq.  *See Clouser v. Espy*, 42 F.3d 1522, 1528 n.5 (9th Cir. 1994) (Wilderness Act); *Bicycle Trails Council of Marin v. Babbitt*, 82 F.2d 1445 n.5 (9th Cir. 1996) (NEPA).  Under the APA, an agency decision may only be set aside if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."  5 U.S.C. § 706(2) (a); *Morongo Band of Mission Indians v. Fed. Aviation Admin.*, 161 F.3d 569, 573 (9th Cir. 1998).  The APA limits judicial review to final agency action.  For an action to be final under the APA, it should mark the conclusion of an agency's decision-making process, and should also be an action by which rights or obligations have been determined or from which legal conclusions flow.  *Bennett v. Spear*, 520 U.S. 154, 177 (1997).

        2.     Deference to Agency

        Where statutory interpretation is at issue, if the language of the statute is clear and not ambiguous, the court need not resort to the agency's interpretation.  *Wilderness Soc. V. U.S. Fish and Wildlife Service*, 353 F.3d 1051, 1061 (9th Cir. 2003).  If no statutory or regulatory provision expressly defines the meaning of the term at issue, the court first considers "the common sense meaning of the statute's words to determine whether it is ambiguous."  *Id.*  The court should also consider the purpose and structure of the statute.  Where the aim of Congress is clear, the court does not defer to the agency.  *Id.* at 1062.  In other words, the court first asks whether the agency decision offends the plain meaning and manifest congressional intent of the statute.  If so, that is the end of the inquiry.  *Id.* at 1060.

        Conversely, if a statute is silent or ambiguous with respect to the issue at hand, then the reviewing court must defer to the agency so long as "the agency's answer is based on a permissible construction of the statute."  *Chevron USA, Inc. v. NRDC, Inc.*, 467 U.S. 837,

United States District Court

For the Northern District of California

1  843 (1984).  In such a case an agency's interpretation of a statute will be permissible,

2  unless "arbitrary, capricious, or manifestly contrary to the statute."  *Id.*  The degree of

3  deference will vary with the circumstances, and courts have looked to the "degree of the

4  agency's care, its consistency, formality, and relative expertise, and to the persuasiveness

5  of the agency's position."  *United States v. Mead*, 533 U.S. 218 (2001) (internal citations

6  omitted); *see also Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (persuasive agency

7  decision should be accorded deference).

8         The Ninth Circuit has explicitly recognized the Forest Service's expertise in the

9  complex and highly technical issues surrounding forest management.  *See Inland Empire*

10 *Public Lands Council v. United States Forest Service*, 88 F.3d 754, 760-61 (9th Cir. 1996).

11 Moreover, this Circuit has also specifically deferred to the Forest Service's interpretation

12 and application of the Wilderness Act and Congressional Guidelines in dealing with grazing

13 issues within wilderness areas.  *Forest Guardians v. Animal & Plant Health Inspection*

14 *Service*, 309 F.3d 1141, 1142-43 (9th Cir. 2002) (deferring to Forest Service's interpretation

15 of Wilderness Act as allowing government to conduct predator control activities in

16 wilderness areas as way to manage grazing).

17 B.     The Parties' Motions

18        1.     Wilderness Act Claim

19        In 1964, Congress enacted the Wilderness Act to "secure for the American people of

20 present and future generations the benefits of an enduring resource of wilderness."  16

21 U.S.C. § 1131(a).  The Act was designed "to assure that an increasing population,

22 accompanied by expanding settlement and growing mechanization, does not occupy and

23 modify all areas within the United States and its possessions, leaving no lands designated

24 for preservation and protection in their natural condition." 16 U.S.C. § 1131(a). Congress

25 thereby expressed support for the principle that wilderness has value to society and

26 requires conservation and preservation.  *Wilderness Soc'y v. United States Fish & Wildlife*

27 *Serv.*, No. 01-35266, 2003 U.S. App. LEXIS 27248, 3-4 (9th Cir. 2004).

28

United States District Court

For the Northern District of California

The Act defines wilderness as a place "where the earth and its community of life are untrammeled by man, where man himself is a visitor who does not remain." 16 U.S.C. § 1131(c).  It is further defined as an area that "generally appears to have been affected primarily by the forces of nature, with the imprint of man's work substantially unnoticeable" and "has outstanding opportunities for solitude or a primitive and unconfined type of recreation." *Id.*

Congress sought to preserve the wilderness character of designated land and included in the Act a general prohibition on commercial activities: "Except as specifically provided for in this chapter . . . there shall be no commercial enterprise and no permanent road within any wilderness area." 16 U.S.C. § 1133(c).  Courts have interpreted "commercial enterprise" to mean any activity conducted "for profit." *Alaska Wildlife Alliance v. Jensen*, 108 F.3d 1065, 1069 (9th Cir. 1997).

The Act, however, also contains several exceptions to the general prohibition on commercial activities.  Congress decided that a number of uses would be compatible with wilderness designation, including grazing, fishing, and hunting. 16 U.S.C. § 1133(d).  The grazing exception explicitly states:

> Within wilderness areas in the national forests designated by this Act . . . the grazing of livestock, where *established* prior to the effective date of this Act, shall be permitted to continue subject to such reasonable regulations as are deemed necessary by the Secretary of Agriculture.

16 U.S.C. § 1133(d)(4) (emphasis added).

The Big Sur Wilderness Act, which designated Kozy Kove as wilderness, also contains a specific provision addressing grazing:

> GRAZING-grazing of livestock in wilderness areas designated by this Act shall be administered in accordance with the provisions of section 4(d)(4) of the Wilderness Act (16 U.S.C. § 1133(d)(4)), further interpreted by section 108 of Public Law 96-560, and the guidelines set forth in Appendix A of House Report 101-405.

Public L. No. 107-370, § 3 B, 116 Stat. 3073 (Dec. 19, 2002).  Section 108 of Public Law 96-560, in turn, notes that the Wilderness Act should be administered in accordance with the guidelines contained in "Grazing in National Forest Wilderness" in House Committee Report 96-617.  Those guidelines anticipate that the number of cattle grazing an area

6

United States District Court

For the Northern District of California

1    would remain at the levels existing at the time the area entered the wilderness system and

2    that the guidelines are not direction to "reestablish uses where such uses have been

3    discontinued." *Id.* at ¶¶ 11-13.

4        The Big Sur Wilderness Act also points to guidelines in Appendix A of House Report

5    101-405, which note that grazing shall be permitted to continue in areas where grazing was

6    established prior to an area's classification as wilderness under the Wilderness Act, subject

7    to reasonable regulation by the Secretary of Agriculture. *Id.* at ¶¶ 1, 2. Those guidelines

8    state that the "legislative history of this language is very clear in its intent that livestock

9    grazing, and activities and the necessary facilities to support a livestock grazing program,

10   will be permitted to continue in National Forest wilderness areas, when such grazing was

11   established prior to classification of an area as wilderness." Furthermore, there should be

12   no curtailments of grazing in wilderness areas simply because an area is designated as

13   wilderness, nor should a land's designation as wilderness be used as an excuse to "phase

14   out" grazing. *Id.* at ¶ 1.

15       Plaintiffs contend that the Forest Service's decision to permit livestock grazing on

16   Kozy Kove violates the Wilderness Act because grazing is a prohibited commercial activity

17   and the grazing exception found in the Wilderness Act and Big Sur Wilderness Act is not

18   applicable because grazing was not "established" on Kozy Kove. According to plaintiffs'

19   statutory interpretation, "established" means that the grazing must have been continuous

20   and maintained without interruption. Plaintiffs contend that there has been no grazing on

21   Kozy Kove since 1990 and it therefore is no longer "established" on the land. As factual

22   support for their position, plaintiffs offer two declarations of Crystal Zitterbart[2], the owner of

23   Kozy Kove from 1990-1995, who states that she did not authorize grazing on Kozy Kove

24   when she owned the land and that she visited Kozy Kove twice each year that she owned

25

26

27   [2] Zitterbart's second declaration was submitted in response to defendants' argument
     that the first declaration was inadmissible because it did not provide a foundation for
     Zitterbart's personal knowledge. Both declarations state that Zitterbart never authorized

28   livestock grazing and never saw livestock grazing on the property.

United States District Court

For the Northern District of California

the land and never observed grazing livestock.  Second Declaration of Crystal Zitterbart, ¶¶ 1-2.  This is plaintiffs' only evidence of grazing on Kozy Kove from 1990-1995.[3]  Plaintiffs also rely on the guidelines in House Committee Report 96-617, referred to above, as support for their argument that because grazing had been discontinued irrespective of the reason, the grazing exception is inapplicable and could not be used to reestablish grazing. In other words, plaintiffs argue that the cessation in grazing commencing in 1990, reflects a discontinuation of grazing and that the Forest Service decision, therefore, impermissibly reestablishes grazing.

Defendants argue that the suspension of grazing commenced when it acquired the land in 1996-97, and that grazing occurred until that time, making the suspension shorter than plaintiffs suggest it was.  Additionally, defendants urge the court to adopt a broader construction of the term "established."  Defendants argue that "established" requires simply that grazing be historically established and because there is no dispute that grazing occurred on the land from 1880 until at least 1990, the grazing exception is applicable. Defendants also move to strike the Zitterbart declarations  because plaintiffs failed to raise the argument that there was no grazing from 1990-1995 during the administrative process, rendering the issue unexhausted.  Additionally, defendants argue that the court's review of the case is limited to the administrative record.

As to the latter two points, defendants are correct.  Under the APA, a plaintiff must exhaust all administrative appeal procedures established by the Secretary of Agriculture or by law before bringing an action in court against the Secretary.  The claims raised during the administrative proceeding and in the federal court complaint must be sufficiently similar to enable the court to determine that the agency was on notice of, and had the opportunity to consider and decide, the same claims now raised in the complaint.  *See Native Ecosystems v. Dombeack,* 304 F.3d 886, 899 (9th Cir. 2002) (citing *Kleissler v. United*

---

[3]   While plaintiffs also point out that neither the 1994 land appraisal nor the 1995 Forest Service recommendation to purchase the land mention grazing, this is not affirmative evidence that grazing did not take place.

United States District Court
For the Northern District of California

*States Forest Serv.*, 183 F.3d 196, 202 (3d Cir. 1999)).  In this case, plaintiffs did not argue during the administrative process that grazing on Kozy Kove had not taken place from 1990-1995, nor did they submit evidence of such to the Forest Service for its consideration. While plaintiffs argue that the court can consider the declarations because plaintiffs' administrative appeal "repeatedly questioned the accuracy of the agency's representations," these general arguments did not give the agency a chance to consider plaintiffs' claim about the lack of grazing form 1990-1995.  Thus, the issue was not administratively exhausted.

Additionally, the Zitterbart declarations are extra-record material.  Generally, the "focal point of judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court."  *See Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985) (quoting *Camp v. Pitts*, 411 U.S. 138 (1973)).  In certain circumstances, however, a court may go beyond the record and review extra-record material. *See Animal Defense Council v. Hodel*, 840 F.2d 1432, 1436 (9th Cir. 1988). These exceptions include: (1) where the administrative record is incomplete and judicial review will be frustrated without extra-record material, (2) where the agency has relied on documents not included in the administrative record, (3) where extra-record material is needed to explain technical terms, and (4) where there is a showing that the agency acted in bad faith.  *Id.*  Plaintiffs suggest that these exceptions apply and are "particularly relevant where a plaintiff alleges that an agency failed to take a hard look under NEPA at certain issues."  Plaintiffs also argue that the court can consider the declarations to determine whether the Forest Service considered all relevant matters, whether its inquiry was sufficient, and whether it acted in bad faith.  Finally, plaintiffs argue that extra-record evidence is admissible both to prove standing and to show actual or prospective irreparable harm to justify injunctive relief.

The court is not persuaded by plaintiffs' arguments.  First, the Zitterbart declarations are not relevant to plaintiffs' NEPA claim:  plaintiffs submitted them to show that grazing did not occur on the land from 1990-1995 in support of their Wilderness Act claim.  Second,

9

United States District Court

For the Northern District of California

1    there is no evidence to support the claim that judicial review will be frustrated without the

2    Zitterbart declarations.  Plaintiffs have not explained how or why extra-record material is

3    necessary to explain the agency's action, how Zitterbart would be able to explain agency

4    action, or how "failure to explain the agency action" frustrates judicial review.  *See National*

5    *Audubon Society v. U.S. Forest Service*, 46 F.3d 1437, 1447 n.9 (9th Cir. 1993).  Third,

6    plaintiffs' claim that the Forest Service acted in bad faith is not supported by any evidence

7    in the record.  Finally, plaintiffs are not relying on the declarations to show standing or

8    irreparable harm.   Accordingly, the general rule that the court's review is limited to the

9    administrative record is applicable in this case, and the Zitterbart declarations must be

10   stricken.

11          Turning to the grazing exception to the prohibition on commercial activity, under the

12   plain language of the Wilderness Act, grazing was "established" on Kozy Kove for purposes

13   of the grazing exception.  The court need not adopt either plaintiffs' or defendants'

14   competing definitions of the word "established," as the court finds that the allowed cattle

15   grazing does not offend the plain meaning and manifest congressional intent of the statute.

16   Based on the admissible evidence before the court and considering only the evidence in

17   the administrative record, there is no dispute that livestock grazing began on Kozy Kove in

18   the 1880s and continued until the Forest Service acquired Kozy Kove.[4]  AR 194 ("Livestock

19   use was established on these properties [including Kozy Kove] prior to acquisition, with

20   range structures and facilities currently in place" and "[t]hese properties were being grazed

21   when the Forest Service acquired them"), 197 (grazing "has been ongoing since circa

22   1880s up to the date of acquisition").  Accordingly, there was grazing on Kozy Kove from

23   the 1880s until 1996 or 1997 when the Forest Service, pursuant to their internal policy of

24   suspending commodity uses on newly acquired land, suspended grazing pending the

25

26   _____

27          [4] While the record is not clear on the exact date that grazing was suspended, it likely
     occurred in 1996 once both stages of the land transfer took place or in 1997 when the Forest
     Service formally accepted title.  Whether grazing ceased in 1996 or 1997 is, however,
28   immaterial to the court's decision on this issue.

**United States District Court**
For the Northern District of California

1  completion of an environmental analysis.  During that evaluation process, the Forest

2  Service proposed a grazing allotment on Kozy Kove, showing an intent to allow grazing on

3  the land.  During that period, structures evidencing grazing remained in place on the land.

4  AR 194, 336, 673-674.

5      Grazing for over 115 years is a sufficient basis on which to conclude that grazing

6  was "established" on Kozy Kove.  The statute requires only that grazing be established

7  prior to designation as wilderness, not at the exact time of designation.  *See* 16 U.S.C. §

8  1133(d)(4); *see also* House Report 101-405 (legislative intent is that grazing be permitted

9  to continue when "such grazing was established prior to classification of an area as

10  wilderness").  Furthermore, "established" means to "bring about into existence," among

11  other things. *See Black's Law Dictionary*, Eighth Edition (2004).  While the court need not

12  go so far as to adopt the government's position that any historical grazing establishes

13  grazing on that land, the grazing exception under the Wilderness Act is certainly applicable

14  here where grazing "existed" on the land for over one hundred years.  And while the court

15  finds that the Forest Service's determination that grazing was established on the land does

16  not offend the meaning of the statute, if there were ambiguity with regards to whether

17  grazing was "established," the Forest Service's decision to authorize grazing on Kozy Kove

18  is persuasive and would be accorded deference, as Congress has recognized the Forest

19  Service's care, consistency, and expertise in matters dealing with the Wilderness Act and

20  grazing allotments.  *See, e.g., Forest Guardians*, 309 F.3d at 1142.

21      Furthermore, the court finds that grazing was not "discontinued" under the

22  Guidelines on grazing.  The Forest Service has indicated that it is their policy to suspend

23  uses such as grazing so that they can study the effects of this type of activity on the

24  environment.  The court finds that under the circumstances of this case, where the

25  suspension of grazing was both temporary and imposed in order to permit the Forest

26  Service to conduct an environmental analysis and assessment of the impact of grazing in

27  order to determine whether to permit grazing, the suspension does not serve to

28  "discontinue" grazing as plaintiffs urge.  To find otherwise would negate the Forest

**United States District Court**
For the Northern District of California

1   Service's efforts to acquire the land and follow good environmental practices and would

2   serve to encourage the Forest Service to avoid such environmental assessments in order

3   to preserve the previously established status of the land to the potential detriment of the

4   environment.  This would be contrary to the purpose and spirit of the Wilderness Act.

5   Accordingly, the court finds that grazing was established on Kozy Kove, that the temporary

6   suspension was not a discontinuation of grazing, and that the Forest Service did not violate

7   the Wilderness Act by permitting continued grazing.

8          2.          National Environmental Policy Act Claim

9          NEPA is a procedural statute that does not "mandate particular results, but simply

10  provides the necessary process to ensure that federal agencies take a hard look at the

11  environmental consequences of their actions."  *High Sierra Hikers Assoc. v. Blackwell*, 390

12  F.3d 630, 639 (9th Cir. 2004); *see also Robertson v. Methow Valley Citizens Council*, 490

13  U.S. 332, 350 (1989) ("If the adverse environmental effects of the proposed action are

14  adequately identified and evaluated, the agency is not constrained by NEPA from deciding

15  that other values outweigh the environmental costs.").  NEPA requires a federal agency

16  such as the Forest Service to prepare a detailed environmental impact statement ("EIS") for

17  "all major Federal actions significantly affecting the quality of the human environment."  42

18  U.S.C. § 4332(2)(c).  Prior to preparing an EIS, the agency may prepare an environmental

19  assessment as a preliminary step in determining whether the environmental impact of the

20  proposed action is sufficiently significant to warrant an EIS.  *See* 40 C.F.R. § 1508.9.  An

21  EA is a "concise public document that briefly provides sufficient evidence and analysis for

22  determining whether to prepare an EIS or a finding of no significant impact."  *Blue*

23  *Mountains Biodiversity Project v. Blackwood*, 161 F.3d 1208, 1212 (9th Cir. 1998).

24         In reviewing an EA the court uses a "rule of reason" test to determine whether a

25  NEPA document's analysis contains a "reasonably thorough discussion" of "significant

26  aspects" of likely environmental consequences.  *Hells Canyon Alliance v. United States*

27  *Forest Service,* 227 F.3d 1170, 1177 (9th Cir. 2000) (citation omitted); *see also Bicycle*

28  *Trails Council of Marin v. Babbit*, 82 F.3d 1445, 1467 n. 21 (9th Cir. 1996 ("Courts defer to

United States District Court

For the Northern District of California

1   agency expertise on questions of methodology unless the agency has completely failed to

2   address some factor, consideration of which was essential to a truly informed decision

3   whether or not to prepare an EIS") (citation omitted).  A plaintiff has the burden to establish

4   that an agency's action is arbitrary and capricious.  *Id.*; *Save Our Wetlands v. Sands*, 711

5   F.2d 634, 644 (5th Cir. 1983).

6        Plaintiffs attack the EA as being inadequate for four reasons: (1) there is insufficient

7   information in the EA regarding the baseline natural conditions on the land; (2) the

8   authorized grazing rates per animal in the 2005 EA is much higher than rates in previous

9   reports and there is no basis for this increase; (3) the EA contains insufficient and

10  contradictory information about the effect grazing will have on sensitive plant life; and (4)

11  the EA does not adequately consider the consequences of grazing on recreation and

12  solitude.  These arguments are without merit, however, as plaintiffs have not shown that

13  the agency's decision was arbitrary and capricious.

14           a)     Natural Baseline Conditions

15       Plaintiffs contend that the EA fails to describe baseline conditions on the land – that

16  is, current conditions on the land.  Plaintiffs note, for example, that the Forest Service's

17  baseline data for soil samples is insufficient, as it only refers to one survey plot.

18       The Forest Service, however, in analyzing environmental consequences in the EA,

19  noted it was comparing the effects of each alternative to "existing baseline conditions."  AR

20  230.  The Forest Service used outside studies (incorporated into the EA by reference)

21  containing information on baseline conditions on the land to discuss the impact of grazing

22  in the EA.  For example, in looking at the potential for erosion, the Forest Service cited

23  USDA Soil Conservation Service soil surveys of Monterey and San Luis Obispo Counties in

24  order to determine soil texture.  AR 234.  It also incorporates the Los Padres National

25  Forest Range Allotment Analysis on Soil Input which further describes soil conditions at

26  Kozy Kove.  AR 1273-75, 1284-95.  The EA itself contains information on soil conditions,

27  soil stability, ground cover and erosion activity.  AR 234-244.

28

13

United States District Court

For the Northern District of California

1    The Environmental Consequences for reissuing grazing permits document also

2  contains some discussion of existing range vegetation at Kozy Kove.  AR 1255.  The

3  Hydrological Range Allotment Analysis describes the water conditions on the land.  AR

4  1375-77.  In sum, the EA and the reports referenced therein provide sufficient evidence of

5  actual baseline conditions at Kozy Kove.

6         b)      Stocking Rate Discrepancies

7    Plaintiffs argue that the agency's decision authorizing cattle to consume 160 Animal

8  Unit Months[5] ("AUM") fails to explain the discrepancy with the 2001 EA, which proposed to

9  authorize 100 AUMs.  The fact that the 2001 EA and the 2005 EA reach different results in

10  terms of the AUM number does not by itself mean that the 2005 EA is flawed.  In

11  calculating the AUM amount, defendants relied on data from a 1999 study and actual use

12  data.  AR 873.  The actual use data from 2001 could have differed from the 2005 data, and

13  plaintiffs do not support their criticisms of the EA's analysis with any evidence that the

14  supporting information and calculations are defective in some manner.  Plaintiffs have not

15  established that the Forest Service's action is arbitrary and capricious on this basis.

16    Plaintiffs also point to the botanist's reference to "100 AUMs" rather than 160 AUMs

17  in the 2003 Biological Evaluation.  However, the botanist referenced the correct figure at

18  other points in the report, and the EA itself contains the correct stocking rate of 160 AUMs

19  for Kozy Kove.  AR 203, 1797.

20         c)      Impact of Grazing on Plants

21    Plaintiffs raise two issues with the EA's botanical evaluation.  First, they argue that

22  the EA fails to resolve conflicting results from three different botanical surveys.  Second,

23  plaintiffs contend that the EA ignored the Forest Service's own published finding that

24  certain types of plants are harmed from grazing in predicting positive consequences of

25  grazing.

26

27  _____

28     [5]  An AUM is the amount of feed required to support one cow for one month.  AR 202
n.2.

**United States District Court**

For the Northern District of California

1    Generally, an EA is upheld if it was based on relevant and substantial data, even if

2  there are other conflicting studies.  *See Wetlands Action Network v. Corps of Engineers*,

3  222 F.3d 1106, 1120-21 (9th Cir. 2000) (when record reveals that agency based finding of

4  no significant impact upon relevant and substantial data, the fact that the record also

5  contains evidence supporting a different result does not render agency decision arbitrary

6  and capricious).  Here, the Forest Service relied on an April 2005 survey by two Forest

7  Service professional botanists who surveyed Kozy Kove for threatened, endangered,

8  sensitive, and proposed sensitive plants.  AR 1968-69.  No plants of concern or suitable

9  habitat were found in the primary or secondary grazing areas of Kozy Kove.  This relevant

10  and substantial data supports the Forest Service's decision.  While plaintiff points to 1999

11  and 2003 plant surveys of Kozy Kove finding sensitive plants on the property, this does not

12  render the agency decision arbitrary and capricious merely because other evidence in the

13  record would support a different result.  *See Wetland Action Network*, 222 F.3d at 1120-21.

14  Furthermore, the EA referred to and relied on the 1999 and 2003 surveys, which is

15  evidence that the Forest Service took a "hard look" at the available environmental data.

16  *Native Ecosystems Council v. United States Forest Serv.*, 54 Fed. Appx. 901, 903-04 (9th

17  Cir. 2003)

18    Plaintiffs also contend defendant should have considered their own Southern

19  California publication – the *Southern California Mountains and Foothills Assessment* –

20  which contradicts the EA's findings regarding grazing's effect on plant life.  As the Forest

21  Service notes, that publication provides a general overview of half the state of California,

22  and is primarily a general assessment of the impacts of livestock grazing in Southern

23  California.  Differences in the land conditions in the disputed area may create differences in

24  the effects of grazing compared to grazing in Southern California.  As discussed above, the

25  Forest Service is entitled to rely on other evidence and studies in the record.  The fact that

26  the agency did not rely on the Southern California publication is not a sufficient reason to

27  set aside the EA, particularly when it is not readily apparent that the Southern California

28  study is even relevant to Kozy Kove.

United States District Court

For the Northern District of California

1              d)      Conflicts with Solitude and Recreation

2          Plaintiffs also argue that the EA did not adequately take into account grazing's

3   effects on recreation.  Specifically, according to plaintiffs, the 2005 EA's finding that

4   recreation is minimal to non-existent contradicts another report's finding that recreation is

5   occasional.  The finding is also contradicted by plaintiffs' declarations.  Plaintiffs argue that

6   the purpose of wilderness is to provide opportunities for "solitude or a primitive and

7   unconfined type of recreation" and suggests that the livestock grazing program is

8   inconsistent with this goal.

9          First, there appears to be no material difference between "minimal" and "occasional"

10  recreational use.  There is support for the EA's finding that there are no developed

11  recreation opportunities on Kozy Kove.  AR 280, 285-86, 1532.  Because there are no

12  forest service developed trails or campsites on the Kozy Kove ranch, potential effects on

13  developed recreation was not a significant issue and was discussed briefly in the EA.  AR

14  279-80.

15         As for plaintiffs' declarations that they use and enjoy the wilderness character of

16  Kozy Kove for activities such as hiking, camping, wildlife viewing, and enjoying solitude, as

17  discussed below, these are extra record materials which the court will not consider.  One of

18  these declarations notes that the decision to allow grazing might conflict with the reopening

19  of a historic trail as part of the California Coastal Trail.  Even if this declaration were

20  admissible, the Forest Service previously responded to the allegations regarding the

21  California Coastal Trail in its public comments, showing that it considered this issue when

22  writing the EA.  AR 889.

23         As for the Forest Service's alleged failure to consider "meaningful information about"

24  conflicts between "solitude and primitive recreational use of these lands and cattle grazing,"

25  the Forest Service clearly considered impacts on recreation in Kozy Kove.  AR 279-286.

26  Plaintiffs' concerns were specifically invited and considered during the notice and comment

27  period.  AR 803-69.  The court is not charged with determining whether the Forest

28  Service's decision was the right one.  The Forest Service considered plaintiffs' views

16

United States District Court
For the Northern District of California

1  regarding the recreation use and ultimately decided to allow grazing.  The rejection of

2  plaintiffs' preferences does not require that the EA be set aside.  NEPA does not require

3  the Forest Service to choose plaintiffs' preferred documents or methodology, so long as it

4  considered relevant data.  *See Native Ecosystems Council,* 54 Fed. Appx. at 903-04.

5         3.     Motions to Strike

6         The declarations of Crystal Zitterbart are STRICKEN for the reasons discussed

7  above.  The court also STRIKES the declarations of Boon Hughey, Steve Chambers,

8  Thomas Hopkins, and Jeff Kuyper, the exhibits, and any other extra record material

9  submitted by plaintiffs.  Plaintiffs first argue that the two Hughey declarations are

10  admissible to show standing and irreparable harm, but his declarations are primarily made

11  to prove the existence of a purported historical trail on Kozy Kove.  Plaintiffs also argue that

12  his declarations show that the agency failed to consider "all the relevant factors" on the trail

13  issue, but the record shows that the agency took steps to investigate the existence of the

14  alleged trail.  AR 871-903, 1592, 1711.  As for the Chambers and Hopkins declarations,

15  plaintiffs only offer them for purposes of standing and irreparable harm, which are not at

16  issue in these motions.  Similarly, the Kuyper declaration is only offered to show standing

17  and exhaustion of administrative remedies.

18         Defendants have stated that if the court strikes all of plaintiffs' declarations, they will

19  voluntarily withdraw their rebuttal declarations, leaving the administrative record as the sole

20  basis for the decision on the cross motions for summary judgment, as is proper under the

21  APA.  The court has not considered plaintiffs' declarations, nor has it considered the

22  government's rebuttal declaration of Brad Warren.  These materials are all STRICKEN.

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

17

**CONCLUSION**

In accordance with the foregoing, the court GRANTS defendants' motions and DENIES plaintiffs' motion.  This order terminates the case and any pending motions.  The clerk shall close the file.

IT IS SO ORDERED.

Dated: June 27, 2007

_____
PHYLLIS J. HAMILTON
United States District Judge

United States District Court

For the Northern District of California

18